UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAVON W.,

                        Plaintiff,                                    **DECISION AND ORDER**

            v.
                                                                      6:20-CV-06730 EAW
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Javon W. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 14) and Plaintiff's reply (Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 12) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 14) is denied.

## BACKGROUND

Plaintiff protectively filed his application for SSI on November 1, 2016. (Dkt. 11 at 18, 154-60).[1] In his application, Plaintiff alleged disability beginning November 1, 2016, due to learning disability, attention deficit disorder, depression, and damaged lung from a gunshot wound. (*Id.* at 18, 66, 154). Plaintiff's application was initially denied on February 7, 2017. (*Id.* at 18, 79-84). A hearing was held before administrative law judge ("ALJ") Stephen C. Fulton in Rochester, New York on May 20, 2019. (*Id.* at 23, 36-65). On July 2, 2019, the ALJ issued an unfavorable decision. (*Id.* at 18-31). Plaintiff requested Appeals Council review; his request was denied on July 22, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-8). This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 1, 2016, the application date. (Dkt. 11 at 21).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "left scapula fracture, status post-gunshot wound (in September 2016), specific learning

disorder, major depressive disorder, posttraumatic stress disorder and a history of attention deficit hyperactivity disorder." (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.02, 1.07, 1.08, 12.04, 12.05, 12.11, and 12.15 in reaching his conclusion. (*Id.* at 21-25).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), with the additional limitations:

> [Plaintiff] can understand and remember simple instructions and concentrate for 2-hour periods over an 8-hour day on simple tasks. He can interact appropriately with coworkers and supervisors and adapt to minor changes in the work setting.

(*Id.* at 25). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 30).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of laundry laborer, kitchen helper/dishwasher, and cleaner. (*Id.* at 30). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 31).

## II.    Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the Commissioner did not properly evaluate the medical evidence in the record. Specifically, Plaintiff argues that the ALJ failed to properly weigh the mental health-related medical

opinions in establishing the RFC.  (Dkt. 12-1 at 7-15).  In response, the Commissioner argues that substantial evidence supports the ALJ's mental RFC and that the ALJ properly weighed the medical opinions before him.  (Dkt. 15-1 at 6).  As further explained below, the Court agrees that remand for further proceedings is necessary.

## A.    Legal Standard for Medical Opinion Evidence

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision."  *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted)).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute [her] own judgment for competent medical opinion.  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted).

Similarly, the ALJ may not "cherry pick" evidence.  *Lee G. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1558(DJS), 2021 WL 22612, at *5 (N.D.N.Y. Jan. 4, 2021) ("Cherry picking refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." (citation omitted)); *Starzynski v. Colvin*, No. 1:15-cv-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper

for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant.") (citing *Trumpower v. Colvin*, No. 6:13-cv-6661 (MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015)). "Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Younes v. Colvin*, No. 1:14-CV-170(DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (quotation and citation omitted).

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 416.927(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion."

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). An ALJ's failure to explicitly apply the requisite factors is a "procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 416.927(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

"Unlike a treating source, a 'nontreating source' is defined as a 'physician, psychologist, or other acceptable medical source who has examined [the plaintiff] but does not have, or did not have, an ongoing treatment relationship with [the plaintiff].'" *Cardoza v. Comm'r of Soc. Sec.*, 353 F. Supp. 3d 267, 283 (S.D.N.Y. 2019) (quoting *Calixte v. Colvin*, 14-CV-5654 (MKB), 2016 WL 1306533, at *24 (E.D.N.Y. Mar. 31, 2016)). "The ALJ is required to articulate consideration of the same factors for evaluating opinions from non-treating medical sources as those for assessing treating sources; the only exception in which the ALJ is 'not required to articulate how [he or she] considered evidence' is from

nonmedical sources." *Erin B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-248 (CFH), 2022 WL 2355429, at *8 (N.D.N.Y. June 30, 2022) (quotation and citation omitted); *Brittani P. v. Comm'r of Soc. Sec.*, No. 1:20-CV-775 (JLS), 2022 WL 1645811, at *3 (W.D.N.Y. May 24, 2022) ("For medical opinions of consultants or non-treating sources, 20 C.F.R. § 416.927(c)(3) provides that 'because non[-]examining sources have no examining or treating relationship with [the claimant], the weight [the ALJ] will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions.'" (quoting *Messina v. Comm'r of Soc. Sec. Admin.*, 747 F. App'x 11, 16 n.4 (2d Cir. 2018)).

Finally, for mental health impairments—which are at issue in this case—the opinions offered by treating providers are "all the more important," given those impairments are "not susceptible to clear records such as x-rays or MRIs," and "depend almost exclusively on less discretely measurable factors, like what the patient says in consultations." *Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 122 (2d Cir. 2018); *see also Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 228 (W.D.N.Y. 2016) (explaining that "the treating physician rule is even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time" (quotations and citation omitted)).

## B.    Assessment of Dr. Brownfeld's and Dr. Austin-Small's Opinions

Adam Brownfeld, Ph.D., conducted a consultative psychiatric examination of Plaintiff on January 5, 2017. (Dkt. 11 at 326-29). The examination report prepared by Dr. Brownfeld notes that Plaintiff was in school through seventh grade and his attention and concentration is impaired due to limited intellectual functioning, his recent and remote

memory skills are impaired, and his intellectual functioning is estimated to be in the borderline range.  (*Id.* at 327-28).  The report further indicates that Plaintiff can dress, bathe, and groom himself, and cook, clean, and do his own laundry, but that he needs help managing money and cannot drive or take public transportation because he is unable to read.  (*Id.* at 328).  Dr. Brownfeld diagnosed Plaintiff with major depressive disorder, PTSD, and specific learning disorder.  (*Id.*).  Dr. Brownfeld opined that Plaintiff had no evidence of a limitation in following and understanding simple directions and instructions and performing simple tasks independently, but that he is moderately limited in maintaining attention and concentration, maintaining a regular schedule, learning new tasks, and relating adequately with others.  He found Plaintiff markedly limited in performing complex tasks independently, making appropriate decisions, and appropriately dealing with stress.  (*Id.*).  He described Plaintiff's prognosis as fair.  (*Id.* at 329).

On January 17, 2017, O. Austin-Small, Ph.D., an advising psychologist, assessed Plaintiff's records.  (*Id.* at 66-77).  Dr. Austin-Small opined that Plaintiff had a marked limitation in understanding, remembering, or applying information, a mild limitation in interacting with others and in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing himself.  (*Id.* at 70).

The ALJ concluded that Plaintiff has a moderate limitation in understanding, remembering, or applying information, a mild limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing oneself.  (*Id.* at 22-24).  As noted, in the RFC crafted by the ALJ, he determined that Plaintiff can understand and remember simple instructions

and concentrate for 2-hour periods over an 8-hour day on simple tasks, is able to interact

appropriately with coworkers and supervisors, and is capable of adapting to minor changes

in the work setting. (*Id.* at 25).

The ALJ discussed the opinions offered by Dr. Brownfeld and Dr. Austin-Small in

several places within his written determination. With respect to Plaintiff's ability to

interact with others, the ALJ stated in connection with his Listing analysis:

> [Plaintiff] was incarcerated in a facility run by the State of New York
> Department of Corrections in late 2017. In multiple assessments, he reported
> that he had no history of mental health treatment, and no current mental
> health complaints. There is no evidence to suggest that [Plaintiff] had
> difficulty interacting with other inmates while incarcerated (Exhibit B9F).
> [Plaintiff's] apparent ability to be around crowds while incarcerated is
> inconsistent with his reports to Dr. Brownfeld and I have therefore given little
> weigh to Dr. Brownfeld's assessment (Exhibit B5F).
>
> Dr. Austin-[Small][2] assessed that [Plaintiff] had only a mild limitation in
> interacting with others, and could interact in a socially appropriate manner
> (Exhibit B1A). I have given great weight to this assessment because it is
> consistent with the record as a whole, including [Plaintiff's] 'Function
> Report' (Exhibits B1A, B3E).

(*Id*. at 23-24 (citations omitted)).

As to his determination that Plaintiff's limitations in adapting or managing himself

were moderate, the ALJ stated:

> In making this finding, I have given great weight to the records associated
> with [Plaintiff's] incarceration, in which he repeatedly denied any mental
> health concerns. There is no record of any mental health services. [Plaintiff]
> was involved in one fight, but there is no other evidence to suggest that he
> was unable to adapt to his incarceration, manage his symptoms or control his
> moods (Exhibit B9F). I have also given great weight to the assessment by

---

[2]     In several places in his decision, the ALJ erroneously refers to Dr. Austin-Small as
Dr. Austin-Smith. It is evident this was inadvertent and does not constitute meaningful
error.

Dr. Austin-[Small] that [Plaintiff] had a moderate limitation in adapting or
managing oneself because it is consistent with the record as a whole. . . .

I have given little weight to the opinion of Dr. Brownfeld that [Plaintiff] has
marked limitations in his ability to appropriately deal with stress (Exhibit
B5F).  Dr. Brownfeld based his opinion on [Plaintiff's] reports, but he did
not have an opportunity to review [Plaintiff's] records from jail.

(Dkt. 11 at 24).

Finally, with respect to the mental RFC determination, the ALJ stated:

With regard to [Plaintiff's] severe mental impairments, I base my finding on
the record as a whole.  I give great weight to the assessment of Dr. O. Austin-
Small at Exhibit B1A.  I find that assessment is consistent with the record as
a whole.

. . . .

There is no evidence of [Plaintiff] being in any type of mental health
treatment.  While incarcerated, [Plaintiff] repeatedly stated that he had no
current mental health complaints (Exhibit B9F).  The only record of a
psychological examination is the consultative examination by Dr.
Brownfeld, which is given great weight (Exhibit B5F).  Despite [Plaintiff's]
reported inability to read, short-term memory deficits, concentration
difficulties and difficulty learning new material, he was able to perform
activities of daily living and shop.  On examination he was able to count and
recall 3 of 3 objects immediately and after a delay.  I have given great weight
to the opinion of Dr. Brownfeld regarding [Plaintiff's] limitation in most
areas of functioning.  However, I find nothing in his examination or the
record as a whole to support marked limitations in [Plaintiff's] ability to
make appropriate decisions and appropriately deal with changes in a work
setting where he is required to follow simple instructions and perform simple
tasks (Exhibit B5F).

(Dkt. 11 at 29).

The Court finds the ALJ's explanation of his evaluation of Dr. Brownfeld's opinion

insufficient.  As an initial matter, the Court agrees that the ALJ has not adequately

explained his reasons for giving great weight to the majority of Dr. Brownfeld's opinions

with the exception of the portion finding Plaintiff to have marked limitations in making

appropriate decisions and appropriately dealing with workplace changes, opinions which

the ALJ dismissed because they were not supported "by his examination or the record as a

whole." (Dkt. 11 at 29). In *McCall v. Colvin*, No. 15-CV-6383P, 2017 WL 631352

(W.D.N.Y. Feb. 16, 2017), when faced with a similar explanation, the court stated:

> The ALJ's explanation for rejecting the limitations assessed by [the consultative psychiatric examiner] relating to [Plaintiff's] ability to interact with others and to deal with stress limitations, while adopting the remainder of [the consultative psychiatric examiner's] opinion, was wholly conclusory. The ALJ reasoned that the limitations were "not internally consistent with the other findings in the examination" and were not "supported by the treatment record and other opinions noted in this decision," although he failed to identify, let alone explain, the internal inconsistencies or the inconsistencies with the record. (Tr. 26). Although there is no "absolute bar to crediting only portions of medical source opinions[,]" an ALJ who chooses to adopt only portions of a medical opinion must explain his decision to reject the remaining portions. *See Younes v. Colvin*, 2015 WL 1524417, at *8 (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently"); *Phelps v. Colvin*, 2014 WL 122189, *4 (W.D.N.Y. 2014) ("[t]he selective adoption of only the least supportive portions of a medical source's statements is not permissible") (internal quotations and brackets omitted); *Caternolo v. Astrue*, 2013 WL 1819264, *9 (W.D.N.Y. 2013) ("[i]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination") (internal quotations omitted) (collecting cases); *Searles v. Astrue*, 2010 WL 2998676, *4 (W.D.N.Y. 2010) ("[a]n ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified").

*Id.* at *14. Similarly, here, while the ALJ is free to credit some or all of a medical source

statement, he is not entitled to "cherry pick" only those portions which support his finding

on disability. *See Lee G. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1558 (DJS), 2021 WL

22612, at *6 (N.D.N.Y. Jan. 4, 2021) ("Moreover, the presence of cherry-picking is

particularly troublesome where, as here, mental health symptoms are involved."); *Bohart*

*v. Astrue*, No. 10-CV-6503, 2011 WL 2516413, at *5 (W.D.N.Y. June 23, 2011) ("An ALJ cannot selectively choose the only portions of a medical opinion that support his determination, while ignoring others.") (citations omitted).

Moreover, even to the extent that the ALJ's decision as a whole could be read to provide specific reasons to reject portions of Dr. Brownfeld's determination, the Court finds that substantial evidence does not support the given reasons. For example, the ALJ stressed that Plaintiff did not receive any mental health treatment while he was in jail, but Plaintiff testified at the hearing that he regularly saw a counselor while in jail. Plaintiff also indicated that the counseling he received while incarcerated was helpful, but that he did not know how to go about finding a counselor once he was released. (Dkt. 11 at 54). At the very least, this testimony undercuts the ALJ's conclusion that Plaintiff did not receive any mental health treatment while in prison and the ALJ did not otherwise provide an explanation of why he found Plaintiff's testimony on this point to be inaccurate. Relatedly, courts are cautioned against placing too much emphasis on the absence of mental health treatment to discredit a claimant's limitations. *Michael E. v. Comm'r of Soc. Sec.*, No. 20-CV-6754S, 2022 WL 3714353, at *4 (W.D.N.Y. Aug. 29, 2022) ("faulting a person with diagnosed mental illnesses . . . for failing to pursue mental health treatment is a questionable practice") (quoting *Simpson v. Colvin*, No. 6:15-CV-06244 EAW, 2016 WL 4491628, at *15 (W.D.N.Y. Aug. 25, 2016) (citations omitted)); *McColl v. Saul*, No. 18-CV-04376 (PKC), 2019 WL 4727449, at *11 (E.D.N.Y. Sept. 27, 2019) ("Furthermore, by discrediting Dr. Eshkenazi's view of Plaintiff's failure to seek or get treatment in assessing the nature and/or extent of Plaintiff's mental health impairments, the ALJ improperly

substituted her own medical opinion for that of the medical expert."); *Johnson v. Colvin*, No. 1:14-CV-00353 (MAT), 2016 WL 624921, at *2, n.1 (W.D.N.Y. Feb. 17, 2016) ("Rather than indicating a lack of serious mental impairment, plaintiff's noncompliance [with treatment] was very possibly a further indicator that her mental health impairments interfered with her functioning").

Similarly, the ALJ reasoned that Dr. Brownfeld's opinions that Plaintiff has difficulties in interacting with others was inconsistent with a lack of evidence showing that Plaintiff had difficulty interacting with other inmates while incarcerated and the fact that he was apparently able to be around crowds in the prison. But the Court questions how much a lack of difficulty interacting with other inmates and ability to be around crowds while incarcerated in a prison setting translates to an ability to get along with others in a work setting, particularly in light of the punitive consequences arising from a failure to comply with prison rules. Accordingly, this reason also does not provide substantial support for a determination to give little weight to Dr. Brownfeld's conclusions. *See Pastore v. Saul*, No. 18-CV-01077-LGF, 2020 WL 548490, at *6 (W.D.N.Y. Feb. 4, 2020) ("Although Plaintiff showed some improvement in his schizophrenia while incarcerated in the Allegheny County Jail for seven weeks in July 2015 (R. 324-25), '[a] claimant's ability to perform adequately when [he] is in a structured, supportive setting[ ] such as medical or psychiatric appointments, which have lowered psychological pressures and interpersonal demands–does not necessarily predict performance and the ability to cope in the

competitive work environment.'" (quoting *Callahan v. Berryhill*, No. 6:17-cv-06245(MAT), 2018 WL 1616058, at *5 (W.D.N.Y. Apr. 4, 2018)).[3]

Furthermore, the ALJ's decision to give greater weight to a non-examining provider, particularly where mental health limitations are at issue, while discrediting the only examining provider is troubling. While neither Dr. Brownfeld nor Dr. Austin-Small were treating physicians, Dr. Brownfeld at least conducted an in-person examination and observed Plaintiff first-hand. *Grisel A. v. Kijakazi*, No. 3:20-CV-00719-TOF, 2021 WL 4350565, at *7 (D. Conn. Sept. 24, 2021) ("To be sure, '[c]ourts in this Circuit long have casted doubt on assigning significant weight to the opinions of consultative examiners when those opinions are based solely on a review of the record." (quoting *Soto v. Comm'r of Soc. Sec.*, No. 19-cv-4631 (PKC), 2020 WL 5820566, at *7 (E.D.N.Y. Sept. 30, 2020)); *see also Estrella v. Berryhill*, 925 F.3d at 98 (cautioning relying heavily on consultative physicians after a single examination, a "concern [that] is even more pronounced in the

---

[3]     The Court also questions the ALJ's conclusions that Plaintiff's "Function Report" demonstrates that Plaintiff reported that he "had no problems getting along with others, with the exception of the police." (Dkt. 11 at 28). At best, Plaintiff's response on the Function Report is ambiguous. The question on the form asks, "Have you any problems getting along with bosses, teachers, police, landlords, or other people in authority?" In response, Plaintiff checked the box for "Yes." The question then asks, "If 'Yes,' please explain" and Plaintiff simply wrote, "Police." (*Id.* at 184). It is far from clear that Plaintiff intended this to mean that he has no problem getting along with anyone except law enforcement. The possibility that the ALJ may have misinterpreted Plaintiff's intention is further demonstrated by Plaintiff's response to the question, "Do you spend time with others?" to which Plaintiff responded, "No." (*Id.* at 181). Because the Court concludes that a basis for remand has otherwise been demonstrated, it need not resolve this potential inconsistency at this time, but notes the ambiguity for the ALJ to explore on remand, if necessary.

context of mental illness where, as discussed above, a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health.").

In sum, taking the present facts as a whole and in light of the issues identified above, the Court is unable to conclude that the ALJ's decision is supported by substantial evidence.  To be clear, the Court takes no position as to whether or not Plaintiff should ultimately be found to be under a disability.  It is for the ALJ to determine on remand.  *See Brady H. v. Comm'r*, No. 1:20-CV-00877 (JJM), 2022 WL 702155, at *6 (W.D.N.Y. Mar. 9, 2022) ("Although ALJ McGuan is not required to credit evidence in the record suggesting more significant functional limitations, plaintiff is entitled to know why he rejected it."); *Newman v. Berryhill*, No. 16 CIV. 9325 (AJP), 2017 WL 4466615, at *19 (S.D.N.Y. Oct. 6, 2017) (noting that "[o]n remand, the ALJ should consider the trends reflected in [Plaintiff's] more recent treatment records and should avoid "cherry-pick[ing] evidence in support of his own conclusions").  The Court is simply concluding that the ALJ's factual findings were not supported by substantial evidence, as is required, warranting remand.  *See Jackson v. Kijakazi*, No. 20-CV-7476 (JLC), 2022 WL 620046, at *18 (S.D.N.Y. Mar. 3, 2022) ("Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary.").  Accordingly, because the Court finds error in the ALJ's assessment of medical opinion evidence and that the error cannot be considered harmless, remand is warranted on this basis.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 12) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 14) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 21, 2022
        Rochester, New York